## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **DANIELLE FILLER FETTE,** | ) | |
| 207 Oak Avenue, | ) | |
| Severna Park, MD 21146, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** _____ |
| | ) | |
| **ACELL, INC.,** | ) | |
| 6640 Eli Whitney Drive, | ) | |
| Suite 200, | ) | |
| Columbia, MD 21046, | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| **Serve on Resident Agent:** | ) | |
| The Corporation Trust, Inc., | ) | |
| 351 West Camden Street, | ) | |
| Baltimore, MD 21201, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Danielle Filler Fette ("Ms. Fette"), by her undersigned counsel, files this

Complaint against her former employer, ACell, Inc. ("ACell"), seeking declaratory judgment,

equitable relief, compensatory and punitive damages for injuries sustained as a result of gender

discrimination, pregnancy discrimination, unlawful retaliation, and a hostile work environment

in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*,

as amended, and the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. §§ 2000e(k), an

amendment of Title VII.

## INTRODUCTION

1.      This is an action by Plaintiff Danielle Filler Fette who was unlawfully discriminated against, retaliated against, demoted and ultimately constructively discharged by her employer Defendant ACell after she announced to ACell's Director of Human Resources that she was pregnant.

2.      Within five weeks of announcing her pregnancy, Ms. Fette learned that ACell's Regional Manager Michael Manning, ACell's Director of Sales William "Tres" Riley, and ACell's President Rodney Bosley were planning to replace her as Area Manager and to demote her to Sales Representative.

3.      Within three months after Ms. Fette had announced her pregnancy, Defendant ACell demoted Ms. Fette and replaced her with a manager, Jeffrey Klecatksy, who, as a male, was not pregnant and had no risk of becoming pregnant.

4.      Within three months after Ms. Fette had filed her Charge of Discrimination at the U.S. Equal Employment Opportunity Commission ("EEOC"), ACell fired her husband, Clay Fette, who had been ACell's Vice President of Product Development.

5.      Upon information and belief, Defendant ACell demoted Ms. Fette because she was female and pregnant and in retaliation for her criticism of ACell's discriminatory practices towards its female employees, specifically its female managers.

6.      Upon information and belief, Defendant ACell fired Ms. Fette's husband in retaliation for her filing an EEOC Charge of Discrimination.

## PRELIMINARY STATEMENT

7.      On January 21, 2011, Ms. Fette began working as a Sales Representative at Defendant ACell.

8.      During May 2011, Ms. Fette was promoted from Sales Representative to Area Manager.

9.      On June 1, 2011, Ms. Fette began working as an Area Manager, received the title of Area Manager, and was paid the rate of commission of an Area Manager.

10.     Between June 1, 2011 and December 31, 2011, as Area Manager, Ms. Fette increased sales in her area to nearly one million dollars ($1,000,000).

11.     On September 29, 2011, Ms. Fette announced to ACell's Human Resources Director that she was pregnant and her due date was in April 2012.

12.     Within five weeks of announcing her pregnancy, Ms. Fette learned that her managers were planning to replace her as Area Manager and to demote her to Sales Representative.

13.     On November 23, 2011, Ms. Fette learned that ACell had hired Jeffrey Klecatsky to replace her as Area Manager.

14.     On December 12, 2011, Ms. Fette learned that Mr. Klecatsky was replacing her as the Area Manager in two of her six territories, effective immediately.

15.     On December 29, 2011, Ms. Fette learned that Mr. Klecatsky was replacing her as Area Manager in four of her six territories.

16.     On January 20, 2012, Ms. Fette learned that Mr. Klecatsky was replacing her as Area Manager for all six of her territories.

17.     On January 20, 2012, during a conference call with Director of Sales Tres Riley, Regional Manager Mike Manning and Human Resources Director Eileen Smith, Ms. Fette learned that she was being demoted to a Sales Representative "after the baby was born" and that Mr. Klecatsky was to become the Area Manager for all six of Ms. Fette's territories.

18.     On February 1, 2012, during a dinner to introduce Jeffrey Klecatsky as the new Area Manager, Director of Sales Tres Riley informed Ms. Fette's former Sales Representatives that when Ms. Fette returned from maternity leave, she would be demoted to a Sales Representative.

19.     Between February 1, 2012 and April 30, 2012, Mr. Klecatsky assumed all the duties and responsibilities of Area Manager for the six territories that Ms. Fette had once managed (*i.e.*, all the duties and responsibilities that Ms. Fette had once performed).

20.     On February 22, 2012, Ms. Fette filed her EEOC Charge of Discrimination.

21.     On April 30, 2012, Ms. Fette began her unpaid maternity leave.

22.     On May 24, 2012, ACell fired Ms. Fette's husband, Clay Fette, who had been ACell's Vice President of Product Development.

23.     Between April 30, 2012 and August 6, 2012, Ms. Fette was on unpaid maternity leave.

24.     On July 26, 2012, Ms. Fette contacted Regional Manager Mike Manning about returning to work on August 6, 2012.

25.     On August 6, 2012, Mr. Manning informed Ms. Fette that she could not return to work until after they had met on August 22, 2012.

26.     On August 22, 2012, Ms. Fette met with Mr. Manning and Vice President of Administrative Operations Patty Meehan to discuss the terms of the new Sales Representative position that ACell was offering to her.

27.     On August 24, 2012, ACell's General Counsel Miles Grody sent Ms. Fette an "Independent Sales Representative Agreement."  The Sales Representative position described in the Agreement would be a demotion from Ms. Fette's former position as Area Manager.

28.     The terms and conditions in the August 24, 1099 agreement would have had negative and intolerable consequences on Ms. Fette's employment at ACell.

29.     On August 28, 2012, Ms. Fette's counsel emailed ACell's General Counsel a revised employment agreement containing terms and conditions that Ms. Fette would accept and that were similar to the terms and conditions in employment presented to prospective male Sales Representatives.

30.     On August 29, 2012, ACell's General Counsel responded that in order for Ms. Fette "to return in a sales capacity" to ACell, she must be subject to the terms in the August 24th agreement.

31.     Upon information and belief, on August 29, 2012, Ms. Fette was forced to resign from Defendant ACell.

## JURISDICTION

32.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

33.     Maryland permits the issuance of, and Ms. Fette has obtained, a Right to Sue Notice from the Equal Employment Opportunity Commission in this matter pursuant to 29 C.F.R. § 1601.28.

34.     Defendant ACell maintains its principal place of business in Maryland and is subject to personal jurisdiction of this Court, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102.

## VENUE

35.     This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f).

36.     The unlawful employment actions alleged in this Complaint occurred in this judicial district, evidence and employment records relevant to the allegations are maintained in this judicial district, and Ms. Fette was employed by the Defendant ACell in this judicial district during the time when Defendant ACell's alleged unlawful actions occurred.

37.     Defendant ACell's corporate headquarters is in Howard County in the State of Maryland, and Defendant ACell transacts business in the State of Maryland.

## ADMINISTRATIVE EXHAUSTION

38.     Ms. Fette has satisfied all administrative prerequisites for filing suit under Title VII, and her administrative remedies have been exhausted.

39.     Ms. Fette timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 531-2012-00886, which set forth claims of gender discrimination, pregnancy discrimination, retaliation, and a hostile work environment.

40.     On December 7, 2012, the EEOC issued Ms. Fette a Notice of Right to Sue against ACell, and she timely instituted this suit within 90 days of her receipt of her Notice.

## PLAINTIFF

41.     Plaintiff Danielle Fette is an adult female citizen of the United States who resides at 207 Oak Avenue, Severna Park, Maryland 21146.  Ms. Fette was employed by Defendant ACell from January 21, 2011 through August 29, 2012.

42.     Upon information and belief, between June 1, 2011 and August 29, 2012, Ms. Fette was an employee within the meaning of Title VII, 42 U.S.C. §§ 2000e(f).

43.     On October 1, 2012, the United States Internal Revenue Service ("IRS") sent a determination letter to ACell concerning the work relationship between ACell and Ms. Fette.

44.     In its October 1, 2012 determination letter, the IRS held that Ms. Fette was an employee of ACell as of June 1, 2012, the date when she was promoted to Area Manager.

45.     Upon information and belief, from June 1, 2011, the day Ms. Fette was promoted to Area Manager, until August 29, 2012, the day that she was constructively discharged after returning from maternity leave, ACell unlawfully mis-classified Ms. Fette as an independent contractor.

46.     Upon information and belief, after receiving the IRS's October 1, 2012 determination letter, Defendant ACell was on notice that it was responsible for satisfying the employment tax reporting, filing and payment obligations that resulted from the IRS's determination that Ms. Fette was an employee.

47.     Upon information and belief, to date, ACell has not paid the required taxes and withholdings relating to Ms. Fette's employment for the period between June 1, 2011 and December 31, 2011.

## DEFENDANT

48.     Defendant ACell is a privately-owned, for-profit company, incorporated under the laws of Delaware, with its principal place of business at 6640 Eli Whitney Drive, Suite 200, Columbia, Maryland 21046.  ACell is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(a)-(b), and at all times relevant to this action, ACell employed at least fifteen (15) or more employees.

## FACTUAL ALLEGATIONS

### Background on Defendant ACell

49.     Defendant ACell develops, manufactures and sells a single medical product, MatriStem™, which is sold in two forms -- sheet form or powder form.  ACell's sales representatives sell this MatriStem™ product to medical care providers, such as hospitals, clinics and surgeons.

**January 14, 2011 - Ms. Fette began working at Defendant ACell as a Sales Representative.**

50.     On January 14, 2011, Ms. Fette began working at Defendant ACell as a Sales Representative in the Baltimore, Maryland area.

51.     In late April 2011/ early May 2011, President Rodney Bosley and Director of Sales Tres Riley asked Ms. Fette to become the Area Manager of six territories, and she accepted their offer.

52.     Upon information and belief, during Ms. Fette's first six months working at ACell, her sales grew from approximately $26,000 to $380,000.

**June 1, 2011 – Ms. Fette was promoted to Area Manager for six territories.**

53.     On June 1, 2011, Ms. Fette was promoted Area Manager for Maryland, Washington, D.C., Northern Virginia, Delaware, Eastern Pennsylvania and Southern New Jersey.

54.     Between May 1, 2011 and June 30, 2011, Ms. Fette worked to hire five additional Sales Representatives for her six territories.

55.     As of June 30, 2011, Ms. Fette was supervising six Sales Representatives.

**June 1, 2011 – December 31, 2011 – Ms. Fette was an outstanding Area Manager.**

56.     Upon information and belief, Ms. Fette was an outstanding Area Manager.

57.     Before joining ACell, Ms. Fette had received a Bachelor of Science degree in Nursing and had worked in both operating rooms and the intensive care units.

58.     Upon information and belief, Ms. Fette was the only Area Manager at ACell between January 2011 and June 2012 who had any clinical or medical training.

59.     As an Area Manager, Ms. Fette accomplished the following:

    a.     managed her six Sales Representatives on a daily basis,

    b.     assisted in training Sales Representatives who worked in other areas,

    c.     created and implemented the sales training course that was given to her Sales Representatives,

    d.     assisted in training the Marketing Manager Jon Werner and the Product Manager Arjun Ishmar,

    e.     answered questions from Sales Representatives and Area Managers from around the country,

    f.     received approval from twenty-six new hospitals in her area to use the Matristem™ product, and

g.      identified and trained surgeons to become speakers about Matristem™ at various conferences and seminars.

60.     Upon information and belief, Between June 1, 2011 and December 31, 2011, Ms. Fette increased sales in her area to nearly one million dollars ($1,000,000).

61.     Upon information and belief, while she was an Area Manager, Ms. Fette performed her duties and responsibilities satisfactorily and received praise from co-workers, managers, and sales representatives throughout ACell.

62.     Between June 1, 2011 and December 31, 2011, Ms. Fette received the following positive comments about her performance as Area Manager from the ACell employees listed below:

    a.      **Tres Riley,** Director of Sales:
- i.     GO DANIELLE.... PLAY BIG...... YOU WIN BIG!  Everyone will close business with this powerpoint.  (June 6, 2011)
- ii.    Leaders are hard to find. You are great.  (June 11, 2011)
- iii.   You are a great leader.  (June 16, 2011)
- iv.    Thank you Danielle for this wonderful case.  It will close a ton of business. ENJOY (August 3, 2011)
- v.     Thanks for your help! It will be awesome if you can get a list of doctors that were using MatriStem with Medline (September 9, 2011)

    b.      **Michael Manning**, North East Regional Manager:
- i.     Great job Danielle! Doesn't get much better than saving lives and having nurses spread the word!  (June 6, 2011)

    c.      **Matthew Berryman**, South East Regional Manager:
- i.     Outstanding Job!!!! (June 6, 2011)
- ii.    Your doing a great job.  Kristys doing very well.  (September 6, 2011)
- iii.   Keep banging it out with Kristy and the Baltimore crew and documenting the other issues.  start looking for a replacement.  What is our time frame for re-evaluating DC? Your doing a great job. (September 13, 2011)
- iv.    I trust you as a manager and you have my support.  I'll call Melissa as soon as I have a chance and will have Eileen send her out the paper work to get her started asap (November 7, 2011)
- v.     Danielle Filler in Mid-Atlantic sold $170, her best month yet, up from a $135 3 month average (25%) (December 21, 2011)

    **d.**    **Michael Bradley**, Western Regional Sales Manager:
- i.    I wanted to forward some great information from one of our Eastern Region counterparts . . . Danielle makes some great points to help these patients. Good luck and keep the success stories coming!  (June 29, 2011)
- ii.    Thanks for sharing the great information with us. (July 13, 2011)

    **e.**    **Rebecca Perez-Gonzalez**, Miami Sales Representative:
- i.    Thank you very much for the reply. . . .Thank god I have you to help guide me!  Thank you again for all you support! (July 13, 2011)
- ii.    Thank you for getting me an answer for the burn patient, that really helped me and the burn team put this all in perspective.. It was extremely helpful. Please continue to include me in your group conference calls as I find these extremely educational, I learned a whole lot today. Please call me when you come to town we must meet. (July 14, 2011)

    **f.**    **Kristy Pilger**, Washington D.C. and Northern Virginia Sales Representative:
- i.    By the way...you can't leave me, you're the best !!!!!  (July 15, 2011)
- ii.    So I need your help definitely on wed. Thurs I am meeting w the main gen surgeons in Winchester and would like you to come. I didn't know when you were coming back.  . . . Have a safe flight home. Hope you had a great time and stop working while your on vaca.  Although your missed and I always love/need your help. (August 1, 2011)
- iii.    Thanks for going with me to Winchester.  Your help was awesome. (August 6, 2011)
- iv.    Thanks for helping me create the protocols.  Your always so helpful☺ (August 17, 2011)
- v.    Hey, that pilonidal opened up...any suggestions for me to pass along? I wouldn't know how to answer the surgeons questions without you. (October 24, 2011)

    **g.**    **Anne Marie McGlumphy**, Maryland Sales Representative:
- i.    That is great.  You are so helpful.  (July 18, 2011)
- ii.    It was a long day, but worth it. The burn wound looked wonderful. Your so good and what you do! Thanks again!! (September 16, 2011)
- iii.    Thanks for helping answer those reimbursement questions.  When all else fails, I can always count on you.  Thanks again.  (October 12, 2011)

    **h.**    **Mike Lutz**, Maryland Sales Representative:
- i.    Thanks for the info.  You always give us the best advice/tips on how to help clinically. (July 23, 2011)
- ii.    Thanks for supporting me.  The Lunch was very successful.  I appreciate it. (September 15, 2011)
- iii.    Thank you so much for helping me with my forecast.  Your thinking is really strategic and makes great business sense. (September 30, 2011)
- iv.    The Mohs surgeon said she was extremely impressed with your knowledge. Thanks for coming. (October 19, 2011)

i.      **Annette Davis**, Philadelphia and Southern New Jersey Sales Representative:
     i.      Thank you for all your help.  You are a life saver. (August 4, 2011)
     ii.      Thank you so much for setting that up.  I'm really excited!! (August 20, 2011)
     iii.      Thank you so much for coordinating and supporting the dinner! (September 5, 2011)
     iv.      Excited to get things moving.  Thanks for helping support me on this. (September 28, 2011)
     v.      When is the superbowl and national meeting dates? I need to know now, .... but YOU will be there so that is better, cause you're the best manager. (September 29, 2011)
     vi.      Let me know when your in town next, you know I love working with you. (November 4, 2011)
     vii.      . . . You know I think your awesome (November 9, 2011)
     viii.      Have an applegraft question.  I ran into a weird question in OR and need your expert clinical advice.  Thanks! (November 15, 2011)

j.      **Mark Harvey**, Philadelphia Sales Representative:
     i.      D, the burn pt's look great.  Thanks so much for the support.  I was so happy to have you there and the doctors love you.  They always ask for you. (August 10, 2011)
     ii.      Can you help me? You always give me the best advice.  Thanks!  (September 27, 2011)
     iii.      Thanks for helping me this week.  Your such a lucky charm.  Don't know what it is but when I work with you I get so much done and make great progress. THANK U!  (October 4, 2011)
     iv.      Good thing you were able to help me with the cross spreadsheet.  Couldn't have done it with out you (October 22, 2011)
     v.      I know there's a ton of obstacles in my accounts but with your help, we'll get through it.  I appreciate your support and help coming up with a plan for my area. (November 13, 2011)

k.      **Arjun Ishmar**, Product Manager:
     i.      Thanks for getting us the dermagraft ppt.  Your one of the only managers that knows how to put these together properly and runs them by marketing. (August 9, 2011)
     ii.      This sounds like a fantastic conference call.  thanks for putting this together. I will do my best to jump on as well. Thanks Danielle.  (September 9, 2011)
     iii.      Just spoke with Dr L  thanks for organizing that situation and getting it all set up. (October 21, 2011)

l.      **Jon Werner**, Marketing Director:
     i.      Since we trust your opinion and know what your doing, do you have any suggestions for people we should interview for a woundcare manager position? (September 2, 2011)

     **m.**    **Andrew Ferrante**, Louisiana Area Manager:
         i.    I'll be on [the conference call] as will 2 of my reps. Thanks. You provide the most helpful training sessions. (June 7, 2011)

     **n.**    **Allison McMahon**, Florida Sales Representative:
         i.    You are so helpful!! Wish you were our manager.  Thanks, Allison (June 8, 2011)
         ii.    The call yesterday was amazing but I had to jump off early... By any chance was it recorded??? If not, would you possibly have 10-15 minutes this week or next to do a quick review? Your support is always so helpful.   Thanks again for all you do.  (June 9, 2011)
         iii.    Ps sheet for cartilage? What do you recommend? Thanks as always for your wonderful guidance even though your not my manager. Lol.  (July 22, 2011)

     **o.**    **Nicole O'Brien**, Outside Recruiter:
         i.    Tres [Riley] said that you were really good and to just go straight to you with candidates.  With all the other areas, I go through Tres and the regionals 1st. (September 15, 2011)

     **p.**    **Eileen Smith**, ACell's Director of Human Resources:
         i.    Thank you Danielle for the extensive documentation. Your coaching and mentoring of Erica [Bosley] is evident throughout.  It clearly builds a picture of the required level of performance, and you have given Erica the tools she needs - good job. (September 29, 2011)

**December 2010/ January 2011 – ACell hired Erica Bosley, President Bosley's daughter.**

63.    Upon information and belief, in late December 2010/ early January 2011, ACell hired Erica Bosley, Defendant President Bosley's daughter, as a Sales Representative.

64.    Between June 1, 2011 and January 20, 2012, Ms. Fette was Ms. Bosley's manager.

65.    Upon information and belief, Ms. Bosley had low sales at the hospitals to which she was assigned and her performance as a Sales Representative was poor.

66.    Upon information and belief, despite the numerous complaints that she received from the doctors and surgeons with whom she worked, ACell's management would not permit Ms. Bosley to be transferred out of her hospitals. No matter how low her sales, Ms. Bosley would not be fired because she was the President Bosley's daughter.

67.     Upon information and belief, after working only two weeks at ACell, the Director of Human Resources, Eileen Smith, summed up the "Erica Bosley situation" as follows: "I'm learning in this company that blood is thicker than water."

**September 29, 2011 –Within five weeks of her announcing her pregnancy, Defendant ACell begins to interview candidates to replace Ms. Fette as Area Manager.**

68.     On or about September 29, 2011, Ms. Fette announced to ACell's Human Resources Director Eileen Smith that that she was pregnant and was due in April 2012.

69.     Upon information and belief, approximately one week after the announcement of her pregnancy, President Rodney Bosley discussed Ms. Fette's pregnancy with her.

70.     Upon information and belief, *within five weeks after she had announced her pregnancy*, Ms. Fette learned that Regional Manager Mike Manning, Director of Sales Tres Riley, and President Bosley were planning to replace her as Area Manager.

71.     Upon information and belief, in November 2011, Ms. Fette's area had its strongest sales numbers to date.

**November 23, 2011 – Ms. Fette learned that ACell was hiring someone named "Jeff."**

72.     On or about November 23, 2011, Ms. Fette received telephone calls from her two Philadelphia Sales Representatives, both told Ms. Fette that someone named "Jeff" had called them and told them that he would be working as a Sales Representative in Philadelphia.

73.     On or about November 23, 2011, after speaking with her two Philadelphia Sales Representatives, Ms. Fette emailed her two Regional Managers, Mike Manning and Matthew Barryman, asking them if there was "a potential new hire in North PA who currently works for Lifecell."

74.     On or about November 23, 2011, Mr. Manning called Ms. Fette and told her that Jeffrey

Klecatsky, the new hire, should not have called any Sales Representatives, and "it is premature"

and "nothing to worry about."

**November 30, 2012 – Ms. Fette learned that Mr. Klecatsky has been hired.**

75.     On or about November 30, 2011, one of Ms. Fette's Philadelphia Sales Representatives

contacted Ms. Fette and informed her that "Jeff" has started working at ACell and was in

training.

76.     Upon information and belief, ACell initially hired Mr. Klecatsky as a Sales

Representative.  However, Mr. Klecatsky held the title of Sales Representative for only one week

in December 2011 before he was promoted to Area Manager, and during that one week, he did

not make any sales.

**December 7, 2012 – Ms. Fette learned that Mr. Klecatsky will be replacing her
in two territories.**

77.     On or about December 7, 2011, one of Ms. Fette's Philadelphia Sales Representatives

again contacted Ms. Fette and told her that Mr. Klecatsky would be replacing her as the Area

Manager for Philadelphia and Southern New Jersey.

78.     On or about December 7, 2011, Ms. Fette again called her Regional Manager Mike

Manning and asked him if she was losing part of her territory.  Mr. Manning did not return her

call.

**December 9, 2012 – Regional Manager Mr. Manning lied to Ms. Fette about Mr. Klecatsky.**

79.     On or about December 9, 2011, Ms. Fette sent a text message to Regional Manager Mike

Manning to learn if she had been demoted and if her area had been reduced by two territories.

80.     On or about December 9, 2011, Mr. Manning called Ms. Fette and told her that, effective

January 1, 2012, Mr. Klecatsky would be the new Area Manager for Philly and South Jersey.

81.     Upon information and belief, Mr. Klecatsky in fact became the Area Manager of Philadelphia and Southern New Jersey within the next two days.

**December 12, 2012 – Mr. Klecatsky replaced Ms. Fette
in Philadelphia and Southern New Jersey.**

82.     On or about December 12, 2011, Annette Davis, one of Ms. Fette's two Philadelphia Sales Representatives, informed Ms. Fette that "Jeff [Klecatsky] was her new manager effective now."

83.     On that same day, on or about December 12, 2011, Mark Harvey, Ms. Fette's other Philadelphia Sales Representative, sent her a text message that read: "I just found out new guy jeff is our new mgr.  if that is true, im going to miss u. u were good to me and I thank you for that."

84.     On or about December 14, 2011, Arjun Ishwar, ACell's Product Manager, told Ms. Fette "Found out today Jeff is the new area manager of philly wanted to make sure your ok.  I thought it was odd cause you are doing so well and just closed so much business up there and your one of the best managers we have."

**December 15, 2011 – Ms. Fette emailed her Manager, ACell's Director of Sales, General
Counsel and Director of Human Resources about Mr. Klecatsky replacing her.**

85.     On or about December 15, 2011, Ms. Fette emailed her Regional Manager Mike Manning and ACell's Director of Sales Tres Riley about Mr. Klecatsky replacing her.

86.     On or about December 15, 2012, Director of Sales Riley replied to Ms. Fette's email and wrote:

> I'm a little confused.  Mike spoke with you on Friday regarding the change. We appreciate your efforts in this area*.  **It is in the best interest of ACell to develop manageable territories to achieve success for both our sales reps and the company.** I apologize for any confusion but it was my understanding that Mike discussed it with you. (emphasis added).

87.     On December 15, 2012, Ms. Fette emailed ACell's General Counsel Miles Grody and

Human Resources Director Eileen Smith saying that a new manager had begun working with her

Philadelphia Sales Representatives and that she had received no formal notice about the change

in her territory.

88.     On the evening of December 15, 2011, Director of Human Resources Eileen Smith

replied to Ms. Fette's email and wrote:

> Danielle, Sorry I wasn't able to get back to you today - I had to leave early, and
> tomorrow I'm flying to Indiana.  Miles [Grody] will be there too so maybe he and
> I can touch base on this.  Certainly there needs to be much more in the way of
> clarification for all involved.  I'll see what I can find out.  Take care, Eileen.

### December 19, 2011 – Ms. Fette emailed the General Counsel and alleges
### gender discrimination.

89.     On or about December 19, 2011, Ms. Fette sent another email to General Counsel Grody

and Director of Human Resources Smith asking for their assistance and writing that ***the only***

***"area managers who have had their territories cut are women and that looks like gender***

***discrimination."***

90.     Upon information and belief, General Counsel Miles Grody did not respond either in

writing or orally to Ms. Fette's December 15, 2012 or December 19, 2012 emails.

91.     Sometime during the week of December 19, 2011, Director of Human Resources Smith

pulled Ms. Fette into her office and told her that General Counsel Miles Grody had asked Ms.

Smith to tell Ms. Fette to keep quiet about her situation and not talk to other managers about it.

### December 21, 2011 – Ms. Fette's sales numbers for the fourth quarter of 2011
### were excellent.

92.     On or about December 21, 2011, Ms. Fette received an email from Regional Manager

Matthew Berryman about sales in her area. Mr. Berryman writes: "Danielle Filler in Mid-

Atlantic sold $170[K], her best month yet, up from a $135[K] 3-month average (25%)."

93.    Sometime later on that same day, December 21, 2011, Mr. Berryman told Ms. Fette that $170K in one month was considered high for an Area Manager.

**December 29, 2011 – Ms. Fette's area was cut from six to two territories.**

94.    On December 29, 2011, Regional Manager Manning emailed Ms. Fette  and wrote that her "new territory currently only has reps in the local DC and Baltimore areas."

95.    Upon information and belief, as of December 29, 2011, Defendant ACell had cut Ms. Fette's area from six territories to two.

**January 1, 2012 – January 20, 2012 – Rumors spread about why
Mr. Klecatsky is replacing Ms. Fette as Area Manager.**

96.    During the first three weeks in January 2012, Ms. Fette's current and former Sales Representatives continued to express their concern about Mr. Klecatsky as their Area Manager.

97.    During the first three weeks in January 2012, some of Ms. Fette's Sales Representatives tell her that there were rumors that Mr. Klecatsky was replacing Ms. Fette because she was pregnant.

**January 20, 2012 –Ms. Fette learned that she will be demoted "after the baby is born."**

98.    On January 20, 2012, Ms. Fette had a conference call with Director of Sales Tres Riley, Regional Manager Mike Manning and Director of Human Resources Eileen Smith, and she was told that Mr. Manning and Mr. Riley had decided that they wanted to transition immediately to a new Area Manager for the her area (*i.e.*, for all six of Ms. Fette's territories).

99.    During the January 20th conference call, Ms. Fette was also informed that she was to be demoted to Sales Representative in a new territory "after the baby is born."

100.    On January 20, 2012, after the conference call, Ms. Fette emailed Ms. Smith to confirm that Mr. Klecatsky was the new Area Manager for the entire area and that she was being demoted.

101.    Upon information and belief, on January 20, 2012, Mr. Manning called Ms. Fette's former Sales Representatives and told them that Mr. Klecatsky was now their new Area Manager.

102.    Upon information and belief, Mr. Manning's January 20th statements to the Sales Representatives contradicted Director of Sales Tres Riley's earlier email to Ms. Fette, in which he had explained that her area was being reduced because "It is in the best interest of ACell to develop manageable territories to achieve success for both our sales reps and the company."

103.    Upon information and belief, Defendant Riley's statement on December 15, 2011 that the territories were being divided to develop more "manageable territories" was false and was a pretext for demoting Ms. Fette because of her pregnancy.

104.    Upon information and belief, since January 20, 2012, the number of territories in Ms. Fette's former area has remained unchanged, and in fact, after January 20, 2012, the number of Sales Representatives in the six territories increased.

105.    Starting on or about January 20, 2012, Ms. Fette began to be omitted from emails sent by ACell's management to the seven Sales Representatives in Ms. Fette's former area.

106.    Upon information and belief, on or about January 20, 2012, President Bosley told ACell managers that Ms. Fette had been asked to step down and become a Sales Representative.

**January 20, 2012 – Mr. Klecatsky became the Area Manager for all six territories.**

107.    Upon information and belief, on January 20, 2012, Mr. Klecatsky became the new Area Manager for all six territories.

108.    Upon information and belief, between January 20, 2012 and January 27, 2012, other Sales Representatives and Area Managers learned about Ms. Fette's demotion.

109.    On or about January 24, 2012, Regional Manager Mike Manning sent an email to all Ms.

Fette's former sales representatives requesting their presence at a "dinner to meet Jeff Klecatksy,

your new Area Manager" on February 1, 2012.

110.    Upon information and beliefe, Mr. Manning did not send his January 24th email to Ms.

Fette, and Ms. Fette was never invited to the dinner to meet Mr. Klecatsky.

111.    Upon information and belief, between his hire date in November 2011 and February 15,

2012, Mr. Klecatsky never communicated with Ms. Fette because he had been told by ACell's

management not to communicate with her.

112.    After January 20, 2012, most of the communications between Ms. Fette and her former

Sales Representatives discussed Mr. Klecatsky's new role as Area Manager.  Four out of her

former Sales Representatives expressed their concern that Mr. Klecatsky had no clinical

background and had less experience than Ms. Fette.

113.    Between January 20 and January 31, 2012, Ms. Fette received the emails, text messages

and calls from her former Sales Representatives about Mr. Klecatsky's new role as Area

Manager. For example, she received the following:

    a.    "How is Jeff [Klecatsky] our new manager going to be able to help us?  He was
          in training last month . . . You have so much clinical expertise and experience
          that's invaluable."

    b.    "Mike [Manning] sent me some kind of stupid email and I thought that you were
          our manager so why aren't you on the email?  I'm sick about losing you. You are
          the best most supportive manager I've had."

    c.    "I got Mike Manning's message about you and you got a bad deal there.  You're a
          great manager so what are they talking about!?"

**February 1, 2012 – ACell had a dinner for Mr. Klecatsky as the new Area Manager.**

114.     Upon information and belief, on February 1, 2012, during the dinner to welcome Jeffrey Klecatsky as the new Area Manager, Director of Sales Tres Riley announced that Ms. Fette would be returning as a Sales Representative after her maternity leave.

115.     Upon information and belief, during the first few weeks of February 2012, Regional Manager Mike Manning and Mr. Klecatsky began interviewing candidates to replace one of the Washington, D.C. and Northern Virginia Sales Representatives.

116.     Ms. Fette played no role in the hiring process for this new Sales Representative.

117.     Upon information and belief, from May 2011 until the hiring of Mr. Klecatsky in November 2011, Ms. Fette had interviewed and had participated in the hiring process of each potential Sales Representative in her area.

**February 6, 2012 – Jeffrey Klecatsky sent an email to his new team.**

118.     On or about February 6, 2012, Mr. Klecatsky sent an email to his new Washington, D.C., Maryland and Northern Virginia Sales Representatives.

119.     In his February 6th email, Mr. Klecatsky wrote to the Sales Representatives about his "team priorities," instructed them that they would need to complete "weekly schedules" and submit them to him each week, and told them that he would be traveling with each Sales Representative.

120.     After reading Jeff Klecatsky's February 6, 2012 email, Ms. Fette believed that she was no longer Area Manager of any territory and had been replaced by Mr. Klecatsky.

**February 7, 2012 - Ms. Fette's lawyer sent a letter to ACell alleging unlawful conduct.**

121.     On February 7, 2012, Ms. Fette's lawyer sent a letter to ACell's Chief Executive Officer James DeFrancesco alleging that ACell's conduct toward Ms. Fette constituted pregnancy

discrimination, gender discrimination, a hostile work environment and retaliation as well as other

violations of federal and state law.

122.    On February 7, 2012, ACell's General Counsel Miles Grody emailed Ms. Fette's counsel

and acknowledged receipt of the letter.

123.    Between September 29, 2011 (*i.e.*, the day that Ms. Fette announced her pregnancy) and

February 7, 2012 (*i.e.*, the day that CEO DeFrancesco received the letter from Ms. Fette's

lawyer), Ms. Fette's managers engaged in the following adverse employment actions against her:

    a.    hiring Jeff Klecatsky, a non-pregnant employee, to replace Ms. Fette as the Area Manager in the Philadelphia and Southern New Jersey  on or about December 9, 2011,

    b.    lying to Ms. Fette about the hiring of Mr. Klecatsky in November 2011 and failing to inform her about his promotion to Area Manager in December 2011,

    c.    demoting Ms. Fette from her position as Area Manager for six territories on January 20, 2012;

    d.    announcing to ACell employees that Ms.  Fette had been asked to step down and would be demoted to Sales Representative;

    e.    calling Ms. Fette's Sales Representatives on January 20, 2012 and telling them that Mr. Klecatsky was to become their new Area Manager;

    f.    formally introducing Mr. Klecatsky as the new "Area Manager" to all the Sales Representatives at the February 1, 2012 dinner, and

    g.    allowing Mr. Klecatsky to assume all the duties and responsibilities of an Area Manager with respect to all Ms. Fette's Sales Representatives as of January 20, 2012.

**February 7, 2012 – February 22, 2012 – ACell continued to take adverse employment actions against Ms. Fette, and she filed an EEOC Charge of Discrimination.**

124.    Even after receiving the February 7, 2012 letter from Ms. Fette's lawyer outlining her

legal claims, Defendant ACell continued to take adverse employment actions actions against Ms.

Fette.

125.    On or about February 7, 2012, Ms. Fette became unable to access ACell's Mobile Work Force ("MWF") database, which is ACell's online system for tracking sales and generating sales reports.

126.    On or about February 13, 2012, ACell distributed its Updated "Company Directory" that listed the people currently working for ACell.  Ms. Fette's name was not included in the Company Directory.

127.    Upon information and belief, some of ACell's employees read the February 13, 2012 Company Directory and believed that Ms. Fette was no longer employed by ACell.

128.    On February 22, 2012, Ms. Fette filed her Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging pregnancy discrimination, gender discrimination, a hostile work environment and retaliation.

### February 22, 2012 – March 2, 2012 – ACell's Management began communicating with Ms. Fette for the first time since her demotion on January 20, 2012.

129.    Between January 20, 2012 and February 29, 2012, Ms. Fette received no communications from (i) Regional Manager Mike Manning, (ii) Human Resources Director Eileen Smith, (iii) Director of Sales Tres Riley, (iv) President Rodney Smith or (v) Chief Executive Officer James DeFrancesco.

130.    On February 29, 2012, one week after Ms. Fette had filed her EEOC Charge of Discrimination, Regional Manager Mike Manning emailed her and requested to meet with her on March 2, 2012 for a "follow-up" to her January 20, 2012 Performance Review.

131.    On March 1, 2012, Ms. Fette responded to Mr. Manning's request and wrote that that the request for a "follow-up" performance review seemed "odd" for the following reasons:

> a.    ACell did not give performance reviews to its Area Managers.  During Ms. Fette's 14 months working at ACell, she had never heard of a single Area Manager to whom Mr. Manning had given a performance review.

    b.      Ms. Fette's January 20, 2012 conference call with Mike Manning and Eileen Smith had not been a performance review.  In fact, during the January 20th conference call, Ms. Fette's performance was not discussed.  Instead, Ms. Fette had been told that Mr. Klecatsky was going to become the Area Manager for the entire area, and that "after the baby was born," she would be demoted to sales representative.

    c.      Mr. Klecatksy and Ms. Fette were not given the title "Co-Area Managers" on January 20, 2012.

    d.      On January 20, 2102, Mr. Klecatsky became the Area Manager, and Ms. Fette was deleted from ACell's Employee Directory and removed from all group emails sent to managers.

    e.      During the January 20, 2012 conference call, Mr. Manning had made it clear to Ms. Fette that she was being demoted and was being replaced by Mr. Klecatsky as Area Manager.

    f.      The January 20, 2012 conference call was not a "Performance Review" but rather a "Notice of Demotion."

132.    Upon information and belief, during the six week period between January 20, 2012 and March 2, 2012, Ms. Fette was not an Area Manager.  As of January 20, 2012, Ms. Fette had been demoted and had been replaced by Mr. Klecatsky as the Area Manager.

**March 2, 2012 – ACell allegedly reinstated Ms. Fette as a "co-Area Manager" with Mr. Klecatsky, and the Sales Representatives learned about Ms. Fette's legal claims.**

133.    On Friday, March 2, 2012, when she was seven months pregnant, Ms. Fette attended a meeting with Regional Manager Mike Manning and Human Resources Director Eileen Smith.

134.    During the March 2, 2012 meeting, Mr. Manning told Ms. Fette *for the very first time,* that she would be a co-Area Manager with Jeff Klecatsky.

135.    During the March 2, 2012 meeting, Mr. Manning denied *for the very first time* that Ms. Fette had been demoted on January 20, 2012.

136.    During the March 2, 2012 meeting, Mr. Manning told Ms. Fette *for the very first time* that she was to submit Weekly Summary Reports about her work to him.

137.    Between January 21, 2011 (the day she began working at ACell) and March 2, 2012, Ms. Fette had never been asked to submit Weekly Reports about her work to anyone.

138.    Upon information and belief, Ms. Fette was informed that effective Friday, March 2, 2012, she would be co-Area Managers with Mr. Klecatsky, with whom she had never met or spoken.

139.    Upon information and belief, after the March 2, 2012 meeting, Mr. Manning called the six Sales Representatives to inform them that Ms. Fette and Mr. Klecatsky would be co-Area Managers.

140.    Upon information and belief, during his March 2, 2012 telephone calls with certain Sales Representatives, Mr. Manning told them that Ms. Fette had filed a lawsuit against ACell and that she was suing ACell for "sexual discrimination" and "maternity leave."

141.    Upon information and belief, the Sales Representatives learned about Ms. Fette's legal claims against ACell for the first time from Mr. Manning. Ms. Fette had not discussed her EEOC Complaint or any of her allegations of ACell's unlawful conduct with any ACell Sales Representative.

142.    Upon information and belief, during the weekend of March 2, 2012, the Sales Representatives to whom Mr. Manning had told about Ms. Fette's lawsuit told other ACell employees.

**March 3, 2012 – March 9, 2012 – Mr. Klecatsky remained the *de facto* sole Area Manager.**

143.    On Saturday, March 3, 2012, Ms. Fette sent an email to her six former Sales Representatives and informed them that she had received a memo from Mr. Manning stating that she and Mr. Klecatsky now both held the title of "Area Manager" and that her demotion to Sales Representative would begin after her maternity leave commenced.

144.    Upon information and belief, ACell had never had co-Area Managers before March 2, 2012.

145.    Upon information and belief, even though Mr. Manning had told Ms. Fette on March 2, 2012 that she had been reinstated as a co-Area Manager, within a week Ms. Fette quickly realized that she was an Area Manager in name only and that in fact Mr. Klecatsky remained the sole Area Manager.

146.    For example, only Mr. Klecatsky was able to access the information in the MWF database and was able to monitor each Sales Representative's performance each week.

147.    Between March 5, 2012 and April 16, 2012, Ms. Fette repeatedly asked Mr. Klecatsky to email her the sales numbers for the six Sales Representatives, but he refused do so.

148.    Before her demotion on January 20, 2012, Ms. Fette had been given access to the MWF database and had been able to track the sales of her Sales Representatives.

149.    Upon information and belief, before receiving Ms. Fette's March 3, 2012 email, at least one of the Sales Representatives had believed that Ms. Fette no longer worked for ACell in any capacity.

**March 9, 2012 – ACell's Management called and threatened the Sales Representatives.**

150.    On or about Friday, March 9, 2012, ACell's General Counsel Miles Grody called some of the Sales Representatives and told them that if they discussed Ms. Fette's legal situation with her, they could be fired.

151.    Upon information and belief, on March 9, 2012, ACell's management and legal counsel threatened the Sales Representatives with possible termination for discussing the very same issue that Mr. Manning had already discussed with them on March 2, 2012.

152.    Upon information and belief, after receiving Mr. Manning's and Mr. Grody's telephone calls on March 2, 2012 and March 9, 2012 respectively, the Sales Representatives knew that ACell and Ms. Fette were engaged in an ongoing legal dispute.

153.    During April 2012, four Sales Representatives told Ms. Fette that they believed that if they supported Ms. Fette or expressed their desire to continue working with her, ACell would fire them.

154.    Upon information and belief, by the end of the week of March 5, 2012, the Sales Representatives understood that Mr. Klecatsky was still their sole Area Manager.

**March 2, 2012 – April 16, 2012 – Mr. Klecatsky continued to act as the sole Area Manager.**

155.    Upon information and belief, during the period between March 2, 2012 and April 16, 2012, Mr. Klecatsky continued to act as though he were the sole Area Manager for all six Sales Representatives, and ACell's management allowed him to do so.

156.    Upon information and belief, ACell's management demonstrated that it was not supporting Ms. Fette or providing her any assistance as a co-Area Manager in the following ways.

    a.  Management refused to put in writing that Ms. Fette was co-Area Manager with Mr. Klecatsky.

    b.  Management did not inform Ms. Fette when new Sales Representatives were hired in one of the six territories.

    c.  Management refused to provide Ms. Fette with names or contact information of potential new hires so that she could interview them.

    d.  Management excluded Ms. Fette from emails containing critical information about the six territories that she was allegedly managing.

    e.  Management continued to allow Mr. Klecatsky to exclude Ms. Fette from his emails and text messages to the Sales Representatives about matters related to sales.

  f. Management continued to view the area as "Jeff's area."  For example, on April 5, 2012, Mr. Manning sent an email to Ms. Fette stating that Jeff is "servicing *his* area." (emphasis added.)

  g. Management refused to allow Ms. Fette access to ACell's MWF database after January 20, 2012.  (Before January 20, 2012, she had been given access to MWF.)

  h. Management permitted Mr. Klecatsky to receive a salary in addition to commissions on the sales of the Sales Representatives, while Ms. Fette only received commissions.

**March 17, 2012 – March 27, 2012 – A doctor complained about Erica Bosley.**

157. On March 27, 2012, Ms. Fette went to one of Ms. Bosley's visits with Dr. Alan Singer.

158. During this March 27th visit, Dr. Singer pulled Ms. Fette aside and made it clear to her that he no longer wanted to work with Ms. Bosley and that he did not want Ms. Bosley to attend the surgery that he had scheduled for the next day.

159. That same day, March 27, 2012, Ms. Fette emailed Regional Manager Mike Manning about Dr. Singer's complaint regarding Erica Bosley.

160. In her March 27th email to Mr. Manning, Ms. Fette discussed Dr. Singer's specific complaint as well as the complaints of the other doctors and surgeons who had worked with Ms. Bosley.

161. On or about March 27, 2012, Mr. Manning emailed Ms. Fette and stated that he would "look into this incident."

162. In his March 27th email, Mr. Manning responded to Dr. Singer's complaint by informing Ms. Fette that she was no longer Ms. Bosley's manager.

163. On or about April 13, 2012, Dr. Singer wrote to ACell stating that Ms. Bosley was "wholly unqualified and ill prepared to serve as a representative of your corporation in the operating room."

**April 12, 2012 – ACell's Updated Company Directory did not contain Ms. Fette's name.**

164.     On or about April 12, 2012, ACell emailed its new Updated Company Directory to all ACell employees, and once again Ms. Fette's name did not appear in the Company Directory.

165.     Upon information and belief, ACell's April Directory, like its February Directory, made it appear to other employees at ACell that Ms. Fette did not work for ACell.

**March 2, 2012 – April 30, 2012 – Mr. Klecatsky received preferential treatment.**

166.     Upon information and belief, Mr. Klecatsky and Ms. Fette were held to different standards when they were Area Managers, and Mr. Klecatsky received preferential treatment from ACell's management, specifically Regional Manager Mike Manning, Director of Sales Tres Riley and President Rodney Bosley.

167.     For example, upon information and belief, during the six weeks between January 20, 2012 and March 2, 2012, Mr. Klecatsky did not accompany two of his six sales representatives on a single visit to a doctor's office or hospital.  Yet Mr. Klecatsky was not reprimanded by anyone at ACell for failing to fulfill the duties and responsibilities of his job as Area Manager.

168.     Between March 2, 2012 and April 16, 2012, five of the six Sales Representatives discussed the issue of the "co-Area Manager" title with Ms. Fette.  During these conversations, the Sales Representatives told Ms. Fette, either directly or indirectly, that ACell's management was treating Mr. Klecatsky better than it was treating Ms. Fette.

169.     For the six weeks between March 5, 2012 and April 16, 2012, Mr. Manning required that Ms. Fette submit a Weekly Summary of Events to him.

170.     Upon information and belief, Mr. Klecatsky was not required to submit Weekly Summaries to Mr. Manning each week.

171.     In her Weekly Summary for the week of April 9, 2012, Ms. Fette explained why she

believed that her demotion to Sales Representative constituted gender discrimination.

Specifically, she wrote the following:

> Although it is clear that I have been more successful in increasing sales than my
> male counterpart and co-Area Manager, Jeff Klecatsky, you are choosing to
> demote me to sales representative. Instead of rewarding my achievements and
> accomplishments as Area Manager, you are choosing to replace me with a man
> who is less experienced, less qualified and less effective as a manager than I am.
> **This is gender discrimination**. (emphasis added.)

**March 29, 2012 – May 1, 2012 – Mr. Klecatsky hired two new Sales Representatives.**

172.     After replacing Ms. Fette as Area Manager, ACell permitted Jeff Klecatsky to hire

additional two Sales Representatives.

173.     Although she was allegedly a co-Area Manager between March 2, 2012 and April 16,

2012, Ms. Fette played no role in the hiring of any additional Sales Representatives.

174.     Upon information and belief, between January 20, 2012 and May 1, 2012, the number of

Sales Representatives that Mr. Klecatsky managed grew from seven to nine people.

175.     Upon information and belief, Mr. Klecatsky hired Tyler Shackelford in March 2012.

176.     On or about March 29, 2012, Ms. Fette first learned that Mr. Klecatsky had hired Mr.

Shackelford when she received Mr. Klecatsky's email welcoming Mr. Shackelford to his "team."

177.     Ms. Fette never interviewed Mr. Shackelford and did not even know that he had been

hired until March 29, 2012.

178.     On March 29, 2012, Mr. Klecatsky sent Ms. Fette an email explaining that he had hired

Mr. Shackelford during February 2012 when Ms. Fette was not "in the picture."

179.     Upon information and belief, Mr. Klecatsky's March 29th email demonstrates that even

he had believed that he had become the sole Area Manager as of January 20, 2012.

180.     On April 2, 2012, when Ms. Fette called Mr. Shackelford to introduce herself, Mr.

Shackelford told her that he believed Mr. Klecatsky was his sole Area Manager and he had never

heard of Ms. Fette before she contacted him.

181.     Upon information and belief, during April 2012, Mr. Klecatsky hired Christina Citino as

a Sales Representative in the Baltimore, Maryland area.

182.     On or about May 1, 2012, Ms. Fette first learned that Mr. Klecatsky had hired Ms. Citino

when she received Mr. Klecatsky's email announcing that Ms. Citino was a new Sales

Representative.

183.      During her employment at ACell, Ms. Fette did not receive any commissions from any

sales made by either Mr. Shackelford or Ms. Citino.

### April 16, 2012 – April 30, 2012 – Ms. Fette took a ten-day leave before her maternity leave began.

184.     On Monday, April 16, 2012, Ms. Fette began a ten-day leave, which had been approved

by Regional Manager Mike Manning.

185.     While she was on her 10-day leave, Ms. Fette gave birth to her daughter, Paige.

186.     On Monday, April 30, 2012, Ms. Fette emailed all her managers and all the Sales

Representatives to let them know that her daughter had been born.

### April 30, 2012 – May 24, 2012 – During Ms. Fette's maternity leave, ACell fired her husband.

187.     On or about Monday, April 30, 2012, Ms. Fette began her unpaid maternity leave.

188.     The next day, on May 1, 2012, Human Resources Director Eileen Smith sent out a

company-wide "NEW BABY ANNOUNCEMENT" about the birth of Ms. Fette's daughter.

189.    On or about May 24, 2012, approximately three weeks into Ms. Fette's maternity leave, ACell fired her husband, Clay Fette, who had been ACell's Vice President of Product Development.

190.    Defendant ACell fired Ms. Fette's husband within three months of her filing her EEOC Charge of Discrimination.

191.    Ms. Fette's believes that if she had not filed an EEOC Charge against ACell, then ACell would not have fired her husband.

192.    As of May 1, 2012, Ms. Fette stopped receiving any income from ACell.

193.    As of June 1, 2012, Mr. Fette stopped receiving any income from ACell.

194.    Upon information and belief, because ACell had been mis-classifying Ms. Fette as an independent contractor and not an employee while she was Area Manager, ACell took the position that Ms. Fette was ineligible to receive any employment benefits, including health benefits through ACell.

195.    Upon information and belief, because Defendant ACell refused to allow Ms. Fette to join ACell's health plan after her husband's termination, Mr. Fette choose to continue his health benefits provided by ACell's group health plan under COBRA.

196.    Starting on June 1, 2012, Mr. Fette began paying $1,592.77 per month for the family's health benefits through COBRA**.**

**July 26, 2012 to August 6, 2012 - Ms. Fette was not permitted to return to work on August 6, 2012.**

197.    On July 26, 2012, Ms. Fette emailed Mr. Manning and requested returning to work on Monday, August 6, 2012, and he did not respond to her email.

198.    On Monday, July 30, 2012, Ms. Fette again emailed Mr. Manning requesting to return to work the following Monday, and Mr. Manning responded by saying "I will get back to you regarding our availability for a meeting."

199.    On or about Monday, August 6, 2012, Mr. Manning emailed Ms. Fette and informed her that she could not return to work until after they had met in person on August 22, 2012.

200.    Upon information and belief, ACell delayed Ms. Fette's return from her unpaid maternity by an additional two and a half weeks.

**August 22, 2012 – August 29, 2012 – Ms. Fette is forced to resign.**

201.    On August 22, 2012, Ms. Fette met with Regional Manager Mike Manning and Vice President of Administrative Operations Patty Meehan to discuss the terms and conditions of the new Sales Representative position that ACell was offering to her.

202.    On Friday, August 24, 2012, General Counsel Miles Grody emailed a copy of the written "Independent Sales Representative Agreement" being offered to Ms. Fette.

203.    Upon information and belief, the terms and conditions contained in the August 24th Sales Representative Agreement offered to Ms. Fette were different from and worse than the terms and conditions contained in the employment agreements presented to the other Sales Representatives.

204.    Upon information and belief, the contractual terms in ACell's offer letters presented to prospective male Sales Representatives, such as Michael Lutz or Chad Ciccone, were more favorable than the contractual terms presented to prospective female Sales Representatives, such as Ms. Fette.

205.    Upon information and belief, Defendant ACell's employment agreements offered to men often contained the following more favorable terms:

        a.    The men were assigned more hospitals or a larger territory to work than the women.

b.  The men were required to achieve a lower total revenue during the first three or six months than the women in order to be eligible for an additional bonus.

c.  The men were offered stock options by ACell's Board, as well a draw and commissions as part of their contract, while the women were not.

206.  On or about August 28, 2012, Ms. Fette's lawyer emailed a revised employment agreement to ACell's General Counsel Miles Grody.

207.  Upon information and belief, the terms in Ms. Fette's revised agreement contained terms similar to the terms that ACell typically offered to prospective male Sales Representatives.

208.  In her August 28, 2012 email, Ms. Fette's lawyer explained the various reasons why the terms and conditions contained in ACell's August 24, 2012 employment agreement were discriminatory and demonstrated evidence of disparate treatment.

209.  On or about August 29, 2012, General Counsel Miles Grody responded by stating that in order "to return in a sales capacity" to ACell, Ms. Fette "must be subject to the terms" contained in ACell's August 24th employment agreement.

210.  Upon information and belief, the terms and conditions in the August 24, 1099 agreement would have the following negative and intolerable consequences on Ms. Fette.

a.  She would earn less income than she had as an Area Manager.

b.  Her status would change from a W-2 employee to a 1099 independent contractor.

c.  She would be ineligible for the employment benefits that a W-2 employee would be eligible to receive, such as health insurance.

d.  She would be "set up to fail" in her new position as Sales Representative because the hospitals to which she was being assigned would not provide sufficient income for her to support her family.

e.  Her duties and responsibilities as a Sales Representative would be significantly less than her duties and responsibilities had been as an Area Manager.

211.  Upon information and belief, on or about August 29, 2012, Ms. Fette was forced to resign from Defendant ACell.

## CAUSES OF ACTION

### COUNT ONE
### TITLE VII PREGNANCY AND GENDER DISCRIMINATION
### in violation of 42 U.S.C. § 2000e *et seq.*

212.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in each preceding paragraph as if fully set forth herein.

**Pregnancy Discrimination**

213.    Title VII prohibits an employer from discriminating against an employee on the basis of gender with respect to the terms, conditions or privileges of employment.

214.    The Pregnancy Discrimination Act of 1978 ("PDA") prohibits an employer from discriminating against an employee on the basis of "pregnancy, childbirth or related medical conditions."  PDA, 42 U.S.C. § 2000e(k).

215.    At all relevant times, Corporate Defendant ACell was an "employer" as the term is defined by Title VII, 42 U.S.C. § 2000e(a)-(b).

216.    At all relevant times, Plaintiff Fette was an "employee" as the term is defined by Title VII, 42 U.S.C. § 2000e(f).

217.    At all relevant times, Ms. Fette was a member of a protected class.

218.    At all relevant times, Defendant ACell's discriminatory treatment, disparate treatment, discriminatory discipline, demotion, constructive discharge and other unlawful actions were adverse employment actions taken against Ms. Fette.

219.    At all relevant times, Ms. Fette had been performing her duties as an Area Manager at a level that met Defendant ACell's legitimate expectations at the time of the adverse employment actions.

220.     Ms. Fette was replaced as Area Manager by Jeffrey Klecatsky, a similarly or lesser qualified, non-pregnant, male employee, who was outside of the protected class.

221.     Defendant ACell treated similarly-situated, non-pregnant employees differently and better than it treated Ms. Fette.

222.     Defendant ACell's articulated reasons for its unlawful actions against Ms. Fette are false and pretextual.

223.     Defendant ACell's actions constitute gender discrimination and pregnancy discrimination and violate Title VII, as amended.

224.     The circumstances surrounding Defendant ACell's discriminatory conduct towards Ms. Fette was motivated by the fact that she was pregnant or demonstrate that she was treated less favorably than non-pregnant employees "because of or on the basis of" her "pregnancy, childbirth or related medical conditions" in violation of the PDA.

### Disparate Treatment

225.     Defendant ACell treated other similarly-situated non-pregnant employees more favorably than it treated Ms. Fette.

226.     During the relevant period, Defendant ACell did not demote other non-pregnant employees from Area Manager to Sales Representative.

227.     Upon information and belief, Defendant ACell replaced Ms. Fette as Area Manager and filled her position as Area Manager with a non-pregnant, male employee, Jeffrey Klecatsky.

228.     Upon information and belief, Ms. Fette had performed satisfactorily as an ACell employee, and she had performed at a level that met Defendant ACell's legitimate expectations at the time of the adverse employment actions.

229.    Upon information and belief, within five weeks from the day that Ms. Fette announced her pregnancy, Defendant ACell sought to replace Ms. Fette with a non-pregnant, male Area Manager.

230.    Within three months of announcing her pregnancy, Ms. Fette was demoted from her position as Area Manager and was replaced by a non-pregnant, male employee.

231.    Upon information and belief, when Mr. Klecatsky was promoted to Area Manager, he had less experience and was less qualified than Ms. Fette for the position.

232.    Upon information and belief, when Mr. Klecatsky became the Area Manager of the same six territories that Ms. Fette had managed, he received preferential and more favorable treatment than Ms. Fette had received when she had been Area Manager.

233.    Such disparate treatment included, *inter alia*, Defendant ACell

a.  hiring Jeffrey Klecatsky in November 2011 to replace Ms. Fette as an Area Manager in all of her six territories as of January 20, 2012 despite Ms. Fette's excellent sales numbers in her area during the last quarter of 2011;

b.  paying Mr. Klecatsky a salary in addition to commissions as an Area Manager while only paying Ms. Fette commissions when she was an Area Manager;

c.  failing to pay Ms. Fette for commissions on all the sales of the Sales Representatives in her six territories while paying Jeffrey Klecatsky's commissions on all the sales of all his Sales Representatives when he became Area Manager of all six territories on January 20, 2012;

d.  allowing Jeffrey Klecatsky to hire additional Sales Representatives in the six territories and thus allowing him to earn more in commissions than Ms. Fette had been allowed to earn when she had been Area Manager;

e.  giving Mr. Klecatsky access to Defendant ACell's Mobile Work Force ("MWF") database containing all sales numbers of his Sales Representatives and denying Ms. Fette access to MWF as of January 20, 2012;

f.  providing Mr. Klecatsky critical sales information about his Sales Representatives, such as weekly sales numbers and sales forecasts, while failing to provide this same information to Ms. Fette;

     g.   requiring Ms. Fette to submit to Regional Manager Mike Manning weekly summary reports detailing her work each week while not requiring Mr. Klecatsky to submit the same type of Weekly Summary Reports to Mr. Manning;  and

     h.   demoting Ms. Fette from Area Manager to Sales Representative while allowing Mr. Klecatsky to remain Area Manager even though he was less experienced, less qualified and less effective as a manager than Ms. Fette.

234.    On January 20, 2012 Ms. Fette was informed that she would be demoted to Sales Representative "after the baby was born" despite the excellent sales numbers in her Area in December 2011 and during the last quarter of 2011.

235.    On or about January 20, 2012, Jeffrey Klecatsky assumed all the duties and responsibilities of Area Manager for the six territories that Ms. Fette had once managed (*i.e.*, all the duties and responsibilities that Ms. Fette had once performed when she had been Area Manager).

236.    On August 29, 2012, Defendant ACell informed Ms. Fette that in order "to return in a sales capacity" to ACell, Ms. Fette "must be subject to the terms" contained in ACell's August 24th employment agreement.

237.    Upon information and belief, during 2011 and 2012, ACell's had presented prospective male employees with employment contracts that contained more favorable terms and conditions than the August 24th agreement that ACell presented to Ms. Fette.

238.    Ms. Fette was constructively discharged when she refused to sign the August 24, 2012 Independent Sales Representative Agreement.

239.    The circumstances surrounding Ms. Fette's disparate treatment was motivated by the fact that she was female or pregnant or demonstrate that she was treated less favorably than non-pregnant employees "because of or on the basis of" her pregnancy, childbirth or related medical conditions.

**Demotion**

240.     On or about January 20, 2012, when Ms. Fette was six months pregnant, Defendant

ACell informed Ms. Fette and all her Sales Representatives that a non-pregnant male, would be

replacing Ms. Fette as Area Manager and that Ms. Fette would be demoted "after the baby was

born."

241.     Upon information and belief, Defendant ACell did not demote other non-pregnant

employees from Area Manager to Sales Representative when it demoted Ms. Fette.

242.     Upon information and belief, Jeffrey Klecatsky, a non-pregnant employee, ultimately

replaced Ms. Fette as Area Manager, and Ms. Fette was demoted to a Sales Representative.

243.     The circumstances surrounding Ms. Fette's demotion were motivated by the fact that she

was female or pregnant or demonstrate that she was demoted "because of or on the basis of" her

pregnancy, childbirth or related medical conditions.

**Discriminatory Discipline**

244.     After Ms. Fette announced her pregnancy, Regional Manager Michael Manning began to

reprimand Ms. Fette about her supervision of Sales Representative Erica Bosley, the daughter of

ACell's President Rodney Bosley.

245.     Specifically, on March 27, 2012 when a doctor complained to Ms. Fette about Ms.

Bosley and Ms. Fette reported the doctor's complaint to Regional Manager Manning, Ms. Fette

was disciplined for Ms. Bosley's poor performance.

246.     Upon information and belief, Ms. Bosley, a non-pregnant employee, was not

reprimanded and received no discipline from anyone at ACell, even though a doctor had written

a letter to ACell stating that Ms. Bosley was "wholly unqualified and ill prepared to serve as a

representative of your corporation in the operating room."

247.    Upon information and belief, on March 28, 2012, Mr. Manning blamed Ms. Bosley's poor performance on Ms. Fette's failure to "coach" or "lead" Ms. Bosley effectively.

248.    Upon information and belief, ACell did not discipline or even reprimand Mr. Klecatsky when he failed to "coach" or "lead" or even manage two of his six Sales Representatives during the six-week period between January 20, 2012 and March 2, 2012.

249.    Upon information and belief, ACell did not reprimand or discipline Mr. Klecatsky for failing to accompany two of his six Sales Representatives on even a single visit to a doctor's office or hospital during this six-week period.  Yet ACell did reprimand or discipline Ms. Fette for allegedly failing to accompany two of her former six Sales Representatives during the six-week period between December 9, 2011 and January 20, 2012.

250.    Ms. Fette was similarly situated with her non-pregnant, male comparator, Mr. Klecatsky.

251.    Upon information and belief, Mr. Klecatsky engaged in the same or similar conduct as Ms. Fette, but the disciplinary measures enforced against Ms. Fette were more severe than those enforced against Mr. Klecatsky for essentially the same conduct.

252.    The circumstances surrounding Ms. Fette's  discriminatory discipline were motivated by the fact that she was female or pregnant or demonstrate that she received discriminatory discipline "because of or on the basis of" her pregnancy, childbirth or related medical conditions.

**Constructive Discharge**

253.    Defendant ACell deliberately made the terms  and conditions of Ms. Fette's Independent Sales Representative Agreement "intolerable" in an effort to induce Ms. Fette to quit.

254.    When Defendant ACell presented Ms. Fette with the Independent Sales Representative Agreement on August 24, 2012, it was deliberately presenting Ms. Fette with an agreement that contained intolerable working conditions.

255.    Defendant ACell's demotion of Ms. Fette from an Area Manager to a 1099 independent

Sales Representative would have negative consequences on Ms. Fett's salary, benefits and

responsibilities.

256.    The terms and conditions contained in ACell's August 24, 2012 Sales Representative

Agreement made the position intolerable for the following reasons:

      a.  She would earn less income than she had as an Area Manager.

      b.  Her status would change from a W-2 employee to a 1099 independent contractor.

      c.  She would be ineligible for the employment benefits that a W-2 employee would
         be eligible to receive, such as health insurance.

      d.  She would be "set up to fail" in her new position as Sales Representative because
         the hospitals to which she was being assigned would not provide sufficient
         income for her to support her family.

      e.  Her duties and responsibilities as a Sales Representative would be significantly
         less than her duties and responsibilities had been as an Area Manager.

257.    Ms. Fette gave Defendant ACell a reasonable opportunity to resolve the problems

contained in the August 24, 2012 Agreement when she responded on August 28, 2012 with a

revised Sales Representative Agreement containing reasonable terms and conditions of

employment to which she would be willing to accept to work as a Sales Representative.

258.    On August 29, 2012, Defendant ACell rejected the terms of Ms. Fette's revised

Agreement and informed Ms. Fette that in order "to return in a sales capacity" to ACell, Ms.

Fette "must be subject to the terms" contained in ACell's August 24th employment agreement.

259.    When Defendant ACell rejected Ms. Fette's efforts to resolve the intolerable terms in the

August 24, 2012 Agreement, she was forced to quit.

260.    Upon information and belief, Defendant ACell's August 24, 2012 Agreement contained

terms and conditions that were discriminatory and that a reasonable person would find

intolerable.

261.    Upon information and belief, the August 24, 2012 agreement offered to Ms. Fette contained terms and conditions that were less favorable treatment than agreements offered to prospective ACell employees who were not pregnant or who were not returning from maternity leave.

262.    Because of the intolerable terms and conditions contained in the agreement, on or about August 29, 2012, Ms. Fette was forced to quit.

**Hostile Work Environment**

263.    From September 29, 2011, the day that she announced her pregnancy, until August 29, 2012, the day of her constructive discharge, Mr. Fette was subjected to a hostile work environment and harassment by Defendant ACell when ACell's management engaged in the following conduct:

   a.   demoted her from Area Manager to Sales Representative,

   b.   treated a non-pregnant, male employee Area Manager who had replaced Ms. Fette more favorably than they had treated Ms. Fette when she had been Area Manager,

   c.   forced her to submit Weekly Summaries detailing her work each week while not requiring the same of her non-pregnant male replacement,

   d.   subjected her to discriminatory discipline,

   e.   permitted ACell's management to make false and derogatory statements about Ms. Fette without fear of reprimand or discipline,  and

   f.   offered Ms. Fette an employment agreement that contained terms worse than the terms in employment contracts offered to prospective male Sales Representatives.

264.    Defendant ACell's conduct was not welcomed by Ms. Fette.

265.    Defendant ACell' conduct was motivated by the fact that Ms. Fette is a woman, was pregnant, had just given birth, was on maternity leave and/or was experiencing medical conditions relating to pregnancy or childbirth when the incidents alleged above occurred.

266.     Defendant ACell's conduct was so severe or pervasive that a reasonable person in Ms. Fette's position would find the work environment to be hostile or abusive, and Ms. Fette believed her work environment to be hostile or abusive.

267.     Defendant ACell knew or should have known of the hostile work environment that Ms. Fette was experiencing but failed to take any actions to stop the hostile or abusive conduct.

268.     As a result the hostile work environment, Ms. Fette suffered tangible adverse employment actions, including pregnancy discrimination, disparate treatment, discriminatory discipline, demotion, and ultimately constructive discharge.

### Malice

269.     Defendant ACell intentionally discriminated against Ms. Fette with malice and/or reckless indifference to Ms. Fette's federally protected rights.

270.     As a direct and proximate result of Defendant ACell's unlawful pregnancy discrimination, disparate treatment, discriminatory discipline, demotion, constructive discharge, and/or hostile work environment, Ms. Fette suffered, and continues to suffer, loss of compensation, income, related benefits and opportunities, potential loss of future professional opportunities and future income and damage to her professional reputation.  Further, she suffered humiliation, embarrassment, pain and suffering, shame, ridicule, stress, severe mental anguish and emotional distress, and will continue to suffer such losses and damages in the future.

### Respondeat Superior

271.     At all times relevant to this Complaint, the following ACell employees: (i) Regional Manager Mike Manning, (ii) Director of Human Resources Eileen Smith, (iii) General Counsel and Vice President Miles Grody, (iv) Area Manager Jeffrey Klecatsky, (v) Director of Sales

William "Tres" Riley, (vi) President Rodney Bosley, and (vii) Chief Executive Officer James

DeFrancesco were agents of Defendant ACell and were acting within the scope of that agency.

## COUNT TWO
## TITLE VII RETALIATION
### in violation of 42 U.S.C. § 2000e *et seq.*

272.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in

each preceding paragraph as if fully set forth herein.

273.    Under Title VII, it is unlawful for an employer to discriminate against any of its

employees because an employee (i) has opposed any practice made unlawful by Title VII or (ii)

has made a charge, testified, assisted or participated in any manner in an investigation,

proceeding or hearing under Title VII.

274.    On December 19, 2011, Ms. Fette sent an email to ACell's General Counsel Miles Grody

and ACell's Human Resources Director Eileen Smith alleging gender discrimination.

275.    When Ms. Fette sent her December 19, 2011 letter alleging gender discrimination, she

was engaging in protected activity.

276.    On February 7, 2012, when Ms. Fette's lawyer sent letter to CEO James DeFrancesco

alleging that Ms. Fette was experiencing pregnancy discrimination, gender discrimination, a

hostile work environment and retaliation, Ms. Fette was engaging in protected activity.

277.    On February 22, 2012, when Ms. Fette filed a Charge of Discrimination at the Baltimore

Field Office of the EEOC, she was engaging in protected activity.

278.    Defendant ACell took adverse employment actions against Ms. Fette for engaging in

protected activity described above.

279.    Between December 19, 2011 (the day Ms. Fette sent an email to ACell's General Counsel

and Director of Human Resources opposing discrimination in the workplace) and February 22,

2012 (the day Ms. Fette filed her EEOC Charge), Defendant ACell took the following adverse

employment actions against Ms. Fette:

    a. On December 29, 2011, Regional Manager Mike Manning informed Ms. Fette that her area had been reduced to only two territories, Washington, D.C. and Baltimore, Maryland.

    b. On January 20, 2012, Ms. Fette was demoted from her position as Area Manager.

    c. On January 20, 2012, ACell's management announced to ACell employees that Ms. Fette had been asked to step down and would be demoted to Sales Representative.

    d. On January 20, 2012, Regional Manager Mike Manning called Ms. Fette's Sales Representatives and told them that Mr. Klecatsky was to become their new Area Manager.

    e. As of January 20, 2012, ACell's management allowed Mr. Klecatsky to assume all the duties and responsibilities of an Area Manager with respect to all Ms. Fette's Sales Representatives.

    f. As of January 20, 2102, Ms. Fette was denied access to Defendant ACell's Mobile Work Force "MWF" database.

    g. On February 1, 2012, Director of Sales Tres Riley and Regional Manager Mike Manning formally introduced Mr. Klecatsky as the new "Area Manager" to all the Sales Representatives in the six territories.

    h. Starting on January 20, 2012, Ms. Fette's managers, including Mike Manning, Tres Riley, Rodney Smith and James DeFrancesco, stopped communicating with Ms. Fette.

    i. On February 13, 2012, Ms. Fette's name was omitted from the updated "Company Directory," which listed all the people currently working for ACell.

280.    After February 22, 2012, the day that Ms. Fette filed her EEOC Charge of

Discrimination, Defendant ACell took the following adverse actions against her.

    a. On March 2, 2012, Ms. Fette received a negative performance review from Regional Manager Mike Manning.

    b. On March 2, 2012, Ms. Fette was told that she was to submit Weekly Reports of all her work to Mr. Manning. Upon information and belief, Mr. Klecatsky, Ms. Fette's non-pregnant, similarly-situated replacement as Area Manager was not required to submit such Weekly Reports to Mr. Manning.

c. Upon information and belief, ACell's management never sent any written communications to inform the Sales Representatives that Ms. Fette would be re-instated as co-Area Manager with Jeffrey Klecatsky as of March 2, 2012.

d. On March 2, 2012, Mr. Manning called certain Sales Representatives and told them that Ms. Fette had had filed a lawsuit against ACell and that she was suing ACell for sexual discrimination and maternity leave.  During his March 2nd calls, Mr. Manning also told the Sales Representatives that Ms. Fette's case was not going anywhere, was completely irrelevant and should be considered "under the water."

e. Upon information and belief, starting on March 2, 2012, ACell's management allegedly re-instated Ms. Fette as a co-Area Manager with Mr. Klecatsky when in fact Mr. Klecatsky remained the sole Area Manager for all six territories.

f. Upon information and belief, on March 9, 2012, ACell's General Counsel Miles Grody called some of the six Sales Representatives and told them that if they discussed Ms. Fette's legal situation with her, they could be fired.

g. During March 2012 and April 2012, Ms. Fette was not informed when two new Sales Representatives, Tyler Shackelford and Christina Citino, were hired as Sales Representatives in the six territories that she was allegedly managing.

h. Ms. Fette never received any commissions from any sales made by either of the two new hires, Mr. Shackelford or Ms. Citino.

i. ACell's management told Ms. Fette that she and Mr. Klecatsky were both Area Managers for the same six territories, but Mr. Klecatsky received both a salary and commissions as an Area Manager while Ms. Fette received only commissions.

j. Upon information and belief, Mr. Klecatsky received commissions on the sales of all the Sales Representatives in his territories while Ms. Fette received commissions from the sales of only five Sales Representatives.

k. On April 12, 2012, ACell emailed its new Updated Company Directory to all ACell employees, and Ms. Fette's name once again did not appear in the Company Directory.

l. On May 24, 2012, less than one month after Ms. Fette had begun her unpaid maternity leave, Defendant ACell fired Ms. Fette's husband, Clay Fette.

m. Defendant ACell refused to allow Ms. Fette to return to work on August 6, 2012, the day that she had requested to return from maternity leave, and instead forced Ms. Fette to extend her unpaid maternity leave by an additional two and a half weeks.

n.  On August 24, 2012, ACell's General Counsel Miles Grody presented Ms. Fette with an independent Sales Representative Agreement that contained terms and conditions that were intolerable.

o.  On August 29, 2012, ACell's General Counsel Miles Grody stated that in order for Ms. Fette "to return in a sales capacity" to ACell, she "must be subject to the terms" contained in ACell's August 24th employment agreement.

p.  On August 29, 2012, ACell constructively discharged Ms. Fette.

281.    The actions listed above, alone and when combined, in part or as a whole, constitute adverse employment actions and were so adverse that they would have dissuaded or discouraged a reasonable employee from making or supporting a charge of discrimination.

282.    Defendant ACell's adverse employment actions were causally connected to Ms. Fette's protected activity.

283.    Within four weeks of Ms. Fette first engaging in oppositional protected activity on December 19, 2011, she had been demoted and replaced by Mr. Klecatsky as Area Manager as of January 20, 2012 .

284.    Defendant ACell's articulated reasons for demoting Ms. Fette are false and pretextual.

285.    As a result of Defendant ACell's unlawful actions, Ms. Fette was demoted from Area Manager to Sales Representative.

286.    As a result of Defendant ACell's unlawful actions, Ms. Fette was ultimately constructively discharged.

287.    After Ms. Fette complained about discrimination at ACell, the top executives at ACell (*i.e.*, CEO James DeFrancesco and President Rodney Bosley) begin retaliating against her husband, Clay Fette.

288.    Within three months of her filing her EEOC Charge of Discrimination, Defendant ACell fired Mr. Fette.

289.     Defendant ACell fired Ms. Fette's husband less than four weeks after Ms. Fette had started her unpaid maternity leave.

290.     As a result of Defendant ACell's unlawful actions, Mr. Fette was fired from ACell.

291.     Ms. Fette's believes that if she had not filed an EEOC Charge against ACell, then ACell would not have fired her husband, Clay Fette.

292.     Defendant ACell's articulated reasons for firing Ms. Fette's husband are false and pretextual.

293.     Upon information and belief, Mr. Fette was terminated in retaliation for his wife's filing a Charge of Discrimination with the EEOC.

294.     The retaliatory actions taken against Mr. Fette by Defendant ACell were so adverse that they would have dissuaded or discouraged a reasonable employee from making or supporting a charge of discrimination.

295.     Defendant's actions described above directly and proximately have caused, and continue to cause, Ms. Fette to suffer loss of compensation, wages, related benefits and opportunities, a loss of future professional opportunities and future income and damage to his professional reputation.  Further Plaintiff has suffered humiliation, embarrassment, pain and suffering, shame, ridicule, stress, severe mental anguish and emotional distress, and he will continue to suffer such losses and damages in the future.

296.     Defendant ACell intentionally engaged in the discriminatory and retaliatory actions described above with malice and/or reckless indifference to Ms. Fette's federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Fette respectfully requests that this Court:

297.   Declare and adjudge that Defendant ACell's employment policies, practices and/or procedures challenged herein are illegal and in violation of Title VII;

298.   Order Defendant ACell to institute and implement policies, practices and/or procedures that provide equal opportunity employment opportunities for women and which eradicate the effects of Defendant ACell's past and present unlawful employment practices against women, including discrimination against women on the basis of pregnancy;

299.   Order Defendant ACell to place or restore Ms. Fette into the job she would now be occupying, but for Defendant ACell's discriminatory policies, practices and/or procedures;

300.   Award Ms. Fette compensatory damages in the amount to be proven at trial, but in any event not less than $200,000;

301.   Award Ms. Fette punitive and exemplary damages to punish Defendant ACell for knowing discrimination and violation of Title VII and to deter Defendant ACell from similar conduct towards other employees in the amount to be proven at trial, but in any event not less than $500,000;

302.   Award Ms. Fette back pay, front pay, lost benefits, other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by Ms. Fette to be determined at trial;

303.   Award Ms. Fette the costs and expenses of this action, including, but not limited to, reasonable attorneys' fees and expenses, reasonable litigation costs, expert fees and any other reasonable fees and costs associated with litigation;

304.    Award Ms. Fette any other appropriate injunctive or equitable relief to prevent further

harm to Ms. Fette, others or the public caused by Defendant ACell; and

305.    Award Ms. Fette any such additional and further relief as this Court may deem just and

proper.


Respectfully submitted,

Date: December 20, 2012            _____/s/_____

LISA A. GOLDBLATT, ESQ.
Fed. Bar No. 13475
**THE GOLDBLATT LAW FIRM, PLLC**
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 293-2033
Fax: (202) 293-3596
Email: lgoldblatt@goldblattlaw.com
*Attorney for the Plaintiff*


## JURY DEMAND

Plaintiff requests that a jury of her peers hear and decide the claims asserted in this case.

Respectfully submitted,

Date: December 20, 2012            _____/s/_____

LISA A. GOLDBLATT, ESQ.
Federal Bar No. 13475
**THE GOLDBLATT LAW FIRM, PLLC**
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 293-2033
Fax: (202) 293-3596
Email: lgoldblatt@goldblattlaw.com
*Attorney for the Plaintiff*